The opinion of the court was delivered by
Valentine, J.:
This was an action brought by Amy Sprague against C. M. Ott for the partition of lots numbers 6 and 9, in block 51, in the city of Olathe, Kansas. The plaintiff claimed to be the owner of one undivided one-half •of said lots, with the improvements thereon, while the defendant claimed to be the solé and exclusive' owner of the property. The case was tried in the court below by the court without a jury, upon an agreed statement of facts, and upon this agreed statement of facts the court below found in favor of the plaintiff and against the defendant, and rendered judgment accordingly; and the defendant, as plaintiff in error, now-brings the case to this-court for review.
It appears from the agreed statement of facts, that on August 1, 1862, and prior thereto, Noble Carithers and Nancy Carithers were husband and wife; that they resided upon and occupied the property in controversy as their homestead, and that the title to the property was in Noble Carithers. Samuel Carithers, a son of Noble Carithers by a former wife, lived with Carithers and wife as a part pf their family. About August 1,1862, Nancy Carithers left her husband on account of cruel treatment received from him, and commenced an action against him for alimony. She never afterward resided upon said property. On September 4, 1862, she obtained a judgment or order against her husband requiring him to pay to her the sum of $75 as alimony — $40 for attorney-fees, and $35 for costs of suit. On September 29,1862, Noble Carith *622 ers executed a warranty deed for the premises to his son, Samuel Carithers; and in October, 1862, he leased the premises to John T. Weaver, and John T. Weaver with his- wife Elizabeth F. Weaver took possession of the property under the lease. In December, 1862, an execution was issued on Mrs. Carithers’s judgment in the alimony case, and was levied upon the premises, and afterward the property was sold at sheriff’s sale to’Mrs. Weaver; and on March 30, 1863, a sheriff’s deed was executed to her for the premises. On March 29, 1864, Samuel Carithers redeemed the property from such sheriff’s sale by paying the amount of the judgment, with.costs, to the sheriff of Johnson county, but the money has never yet been paid to Mrs. Weaver. Afterward, and sometime during the year 1864, Mrs. Carithers went to southern Kansas to reside, and while there lived with a daughter of hers by a former husband. In 1865, Carithers went to Leavenworth to reside, and never afterward resided in Johnson county. In- March, 1866, the action of Mrs. Carithers against her husband for alimony was dismissed without prejudice. On March 18, 1868, Mrs. Carithers executed a quitclaim deed for the premises to Mrs. Weaver. On March 4, 1870, Samuel Carithers commenced an action of ejectment against both Weaver and his wife, to evict them from the premises, and in this action he was successful. This case of ' Carithers .v. Weaver and Weaver will be found reported in 7 Kas. 110. Afterward, on March 28, 1871, Nancy Carithers executed a quitclaim deed for the premises to Samuel Carithers. On February 26, 1872, Samuel Carithers, who was still in the possession of the property, sold and conveyed the same by warranty deed to the defendant, Ott, for the sum of $2,500 paid by Ott at the time; and Ott took possession of the property and remained in the exclusive possession thereof up to the time of the commencement of this present action. In the year 1879, Noble Carithers went to the state of Illinois, and in March, 1880, there died. On October 20, Mrs. Carithers executed a warranty deed for the premises to Mrs. Weaver. On January 20, 1881, Mrs. Weaver and her *623 husband executed a quitclaim deed for the premises to their daughter, Mrs. Sprague, who is the plaintiff in this action; and on the same day, Mrs. Sprague commenced this action against the defendant, Ott, for partition as aforesaid.
All the foregoing deeds were duly recorded soon after their execution, but they were all executed upon substantially a nominal consideration, except the sheriff’s deed to Mrs. Weaver and the warranty deed from Samuel Carithers to the defendant Ott. We are inclínéd to think that the judgment of the court below is correct. The deed from Noble Carithers to his son, Samuel Carithers, executed on September 29, 1862, was a nullity, for the property was at that time the homestead of Carithers and his family, and the deed was not signed or acknowledged by the wife of Carithers. Carithers and his son Samuel were then residing upon the property, and Mrs. Carithers, who was then living separate and apart from her husband, because of his ill-treatment of her, evidently had no intention of abandoning her homestead; but if she had, still the husband could not convey his homestead by a separate deed. (Chambers v. Cox, 23 Kas. 393.)
Whether the sheriff’s deed to Mrs. Weaver, executed on March 30,1863, was ever of any validity or not, it is not necessary to determine, for within the proper time under the laws of 1861, (Comp. Laws of 1862, pp. 769-772,) the property was redeemed and the title consequently reverted to and revested in the original owner of the property, which in this case was Noble Carithers; and afterward in a suit between Samuel Carithers and Mrs. Weaver, it was held that she had no title.
The lease from Carithers to Weaver cannot affect any question involved in this case, nor can the fact that Mrs. Weaver has never yet received the redemption-money paid by Samuel Carithers to the sheriff. The quitclaim deed executed by Mrs. Carithers to Mrs. Weaver on March 18,1868, and the quitclaim deed executed by Mrs. Carithers to Samuel Carithers on February 26,1872, cannot have any force or effect, because at the time these two deeds were executed Mrs. *624 Carithers had no title to the property to convey, and the deeds being only quitclaim deeds, any after-acquired title vesting in Mrs. Carithers would not inure to the benefit of either Mrs. Weaver or Samuel Carithers. (Simpson v. Greeley, 8 Kas. 586, 597, 598; Bruce v. Luke, 9 Kas. 201, 207, et seq.; Scoffins v. Grandstaff, 12 Kas. 467, 469, 470.)
The quitclaim deed from Mrs. Carithers to Mrs. Weaver may also be considered as having been adjudicated and held insufficient to pass title in tfie case of Carithers v. Weaver and Weaver, already referred to.
The quitclaim deed from Mrs. Carithers to Samuel Carithers ■cannot have the force and effect to make the deed from Noble Carithers to Samuel Carithers valid. It does not appear to. have been executed with any such intention; but it appears to have been executed solely with the intention of conveying only the interest that Mrs. Carithers had in the property at the very time when she executed the deed. It does not appear that she even thought of her husband’s deed when she executed the quitclaim deed to Samuel Carithers; and there is nothing to show that Carithers ever consented to or ratified this quitclaim deed. The deed from Noble Cardthers to Samuel Carithers was absolutely void,' as we have already stated, and as follows from a number of decisions already rendered by this court. It was void, because it was an attempt to convey or alienate the homestead of Noble Carithers and his family without the consent of his wife, which •cannot be done in Kansas. A homestead can be conveyed or alienated in Kansas only by “the joint consent of husband and wife, when that relation exists.” (Const., art. 15, § 9.) Two separate and independent conveyances by the husband and wife would not be sufficient. (Thompson on Homesteads, § 527, et seq.) It might be that a husband, and wife, by two separate instruments; could alienate the homestead, when it was intended by both that such instruments should operate together as a single instrument; for in such a case it might perhaps be said that the separate consent of each had such a connection with each other that they might together be con *625 sidered as the joint consent of both. But where two separate instruments are executed at two separate and distinct times, as in this case; where a long interval elapses after one is executed before the other is executed, as in this case — the interval in this case being over eight years; and where the two instruments are executed without any reference to each other, or without any intention that the two together may be considered as one single and united instrument, we think that one cannot make the other valid.
The warranty deed from Samuel Carithers to the defendant, Ott, was of but little validity at the time it was executed, for at that time the title to the property was in Noble Car-, ithers, and not in Samuel Carithers; but the deed being a warranty deed, whatever title afterward vested in Samuel Carithers would inure to the benefit of Ott. In 1880 Noble Carithers died, and the title to the property then descended, under the laws then in force, one-half to Mrs. Carithers, and the other half to Samuel Carithers,,Samuel being the only child of Noble Carithers. (Comp. Laws 'of 1879, eh. 33.) But as Samuel Carithers had already attempted to convey his interest in the property by warranty deed to the defendant, Ott, Samuel Carithers’s interest in the property immediately inured to the benefit of Ott. We think the deed executed by Mrs. Carithers to Mrs. Weaver, on October 20, 1880, conveyed a one-half interest in the'property to Mrs. Weaver; and therefor, that Mrs. Sprague now owns an undivided half-interest in the property, and that she is entitled to her action for partition.
It is claimed, however, by counsel for Ott, that the action should have been brought in the probate court, under the provisions of the act concerning descents and distributions. (Comp. Laws of 1879, ch. 33.) We do not think that counsel properly interprets that act; for even if it should be conceded that Mrs. Carithers, if she had not conveyed the property to Mrs. Weaver, and if she herself had commenced the action to recover her interest therein, should have commenced her action in the probate court, and in accordance *626 with the procedure prescribed by the act relating to descents- and distributions — still, it does not follow that Mrs. Spraguemust also resort to that forum and to that mode of procedure. Mrs. Carithers, as the widow and one of the immediate heirs of Noble Carithers, might have to look to the-probate court to obtain her rights; but we do not think that it at all follows that Mrs. Sprague must look to such court. Indeed, we would think it probable that Mrs. Sprague would have no right to commence her action in the probate court, but must resort to an action in partition in the district court, as she has done in the present case.
The judgment of the court below will be affirmed.
Horton, C. J., concurring.